(79 South. 35)

## ATLANTIC COAST LINE R. CO. v. FARMER. (4 Div. 776.)

(Supreme Court of Alabama. April 18, 1918.)

1. CARRIERS ☞303(6) — PASSENGERS — LEAVING CARS.

A carrier must exercise care in providing reasonably safe and convenient means for the assistance and protection of passengers in getting on and off its cars.

2. CARRIERS ☞303(6)—PASSENGERS—ASSISTANCE IN ALIGHTING.

In the absence of circumstances rendering such assistance necessary, a carrier is not required to furnish a boarding or alighting passenger with a portable box or footstool; but, where the car step is unreasonably high, it should furnish a box or footstool, and should exercise due care to see that it is placed or used by its employés in a safe manner.

3. CARRIERS ☞303(6) — ALIGHTING PASSENGERS—FOOTSTOOL.

Where the lowest car step is not higher above the ground than is usual for other vehicles from which people safely alight without the assistance of a footstool, it need not be provided, but where a step is three feet or so from ground, carrier must provide a footstool or some convenient means to aid alighting passengers.

4. CARRIERS ☞303(8)—BOARDING OR ALIGHTING PASSENGER—MANUAL ASSISTANCE.

If the proper physical facilities are provided for an alighting passenger, no duty rests upon the carrier in ordinary cases to render manual assistance to a passenger, even though requested to do so.

5. CARRIERS ☞314(5)—PASSENGERS—FAILURE TO ASSIST—SUFFICIENCY OF COMPLAINT.

Counts based on conductor's failure or refusal to assist plaintiff in alighting when on account of conditions existing at car step she could not get off the car without peril, because car steps were wet and slippery, not alleging any want of facilities for leaving the car in some other way than by attempting to step immediately across from the car to the station platform, were insufficient to show the conductor was bound to assist the plaintiff.

6. CARRIERS ☞314(5)—DUTY TO ALIGHTING PASSENGER — ASSISTANCE — SUFFICIENCY OF COMPLAINT.

A count, invoking the conductor's duty to assist plaintiff in alighting on account of the arrangement of the depot and tracks at her station, so that she could not unaided leave the coach on the right, because it was against the depot platform, and she could not step from the coach to the depot without assistance, and because the ground on the left side of the coach was much lower than the coach, so that she could not alight, did not show the absence of safe and convenient facilities for alighting, or any duty to provide means for alighting at another place voluntarily chosen by plaintiff for that purpose, or the duty of manual assistance by the conductor.

7. CARRIERS ☞314(5)—PASSENGERS—FAILURE TO ASSIST—SUFFICIENCY OF COMPLAINT.

Counts, charging defendant with negligence in not maintaining a suitable means at a station for plaintiff to get off the train with convenience and safety, and alleging defendant's duty to maintain a suitable means of egress at such station and negligence in failing to maintain a safe and convenient means of egress from the train at that station, were sufficient against demurrer.

8. APPEAL AND ERROR ☞1042(1)—GENERAL ISSUE—ELIMINATION—PREJUDICIAL ERROR.

In such case, where defendant's special plea was no more than the general issue, its elimination on plaintiff's motion was not prejudicial error.

9. CARRIERS ☞303(6) — ALIGHTING OF PASSENGER—CONDITION OF PREMISES.

The fact that on former occasions movable planks had been laid across from the coach steps to the depot platform, and that plaintiff had alighted by that means on that side, did not impose on defendant the special duty of continuing such services, nor estop it from requiring passengers to alight by other means at a different place.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Action by Jennie Farmer against the Atlantic Coast Line Railroad Company, for damages for injury while a passenger. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Reversed and remanded.

Plaintiff was a passenger on defendant's train en route from Abbeville to Dothan, involving a change of cars at Grimes. The undisputed evidence shows that her coach was side-tracked at Grimes, so that its platform was a distance of three feet from the depot platform; that it was raining; that, after the other passengers had alighted from the coach onto the ground with the aid of a footstool on the opposite and open side, plaintiff came out, and, in attempting to jump from the coach platform to the depot plat-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

form, with the assistance of a bystander who held her hand, she fell between the two platforms and received the injuries complained of. Plaintiff testified that when she first went out there was no platform provided to reach the depot platform on the right, and no footstool for use on the left side, and she requested the conductor to put the platform for her to get off, and he replied that he knew nothing about it; that she told the conductor that she could not get off unless he put the platform (meaning a movable plankway) or got a stool and assisted her; that it was three feet from the lowest step to the ground on the left where the conductor was standing; that she could not have gotten off without assistance; that there was no footstool, and the conductor refused to assist her. Plaintiff was allowed, over objection of defendant, to prove by her own testimony and that of others that on former occasions a walkway of several planks was laid between the car platform and the depot platform over which passengers made their exit. The conductor testified that there was a footstool beneath the carstep all the while, which was used by a number of other passengers while alighting, and denied that he refused to assist plaintiff to alight on that side.

The complaint was in five counts, count 1 alleging that plaintiff requested conductor to assist her off the coach; that he refused to do so; that on account of conditions existing at said Grimes she could not get off said coach without peril to herself; that on said date it was raining, and the steps of said coach were wet and slippery; that when defendant's conductor refused to assist her in leaving said coach, a man standing near offered to assist her, took hold of plaintiff's hand in an effort to assist her, and that when plaintiff went to step from the passenger coach step to the depot platform, she slipped and fell down between said coach and platform, greatly injuring plaintiff. And plaintiff avers said injuries were occasioned as a proximate result of the negligence of defendant's conductor in not assisting plaintiff to get off said passenger coach, and plaintiff avers that it was the duty of defendant, or its conductor, or other servants, to assist plaintiff and other passengers in getting off such coach. Count 2 is much like count 1, and alleges that, after charging that the conductor refused to assist her, on account of the arrangement of the depot and track at said station, plaintiff could not leave said coach on the right without assistance, because the coach was up against the depot platform, and plaintiff could not step from said coach to the depot without assistance, and, the ground on the left-hand side of the coach being much lower than the coach, that plaintiff could not get down from the coach, and that when plaintiff attempted to get off said coach she slipped and fell between said

coach and platform, etc. And plaintiff avers that the conductor of said train knew of defendant's peril in leaving said coach, and willfully and wantonly, and with reckless indifference to the consequence to plaintiff, failed and refused to assist plaintiff in leaving said passenger coach. Count 3 is identical with count 1, except that it charges that the conductor willfully and wantonly failed and refused to assist plaintiff in leaving said train. Count 4 is identical with count 1, except that it charges defendant with negligence in not properly maintaining a suitable means at said station of Grimes for plaintiff to get off said train with convenience and safety to plaintiff and other persons dealing with it; and plaintiff avers it was the duty of defendant to have and maintain a suitable means of egress at said train at said station. Count 5 is identical with count 1, except that it charges defendant with negligence in failing to maintain a safe and convenient means of egress from said train at Grimes.

Demurrers being overruled to each of the counts, defendant pleaded not guilty, and specially, as follows:

(2) Plaintiff received her injuries in the following manner: That while the coach in which she was riding was standing on the side track at Grimes, she undertook to step from the platform of the coach to the platform of the station house, a distance of about three or four feet, with the assistance of one Pilcher; that in doing so she made a misstep and fell, and in this way received the injuries complained of; that she could have safely alighted from said coach by descending from the platform by means of the step, and to a footstool onto the ground.

On plaintiff's motion the court struck this plea from the files.

John R. Tyson, of Montgomery, for appellant. H. K. Martin, of Dothan, for appellee.

SOMERVILLE, J. [1, 2] A carrier must exercise care in providing reasonably safe and convenient means for the assistance and protection of passengers in getting on and off its cars. Central of Ga. Ry. Co. v. Carlisle, 2 Ala. App. 514, 56 South. 737; 10 C. J. 933, § 1354. "In the absence of circumstances rendering such assistance necessary, a carrier is not required to furnish a boarding or an alighting passenger with a portable box or footstool. But where the car step is unreasonably high, the carrier should furnish a box or footstool to facilitate the boarding or alighting of a passenger, and should exercise due care to see that such box or stool is in a safe condition, and is placed or used by its employés in a safe manner." 10 C. J. 934, § 1354.

[3] Where the lowest car step is not higher above the ground than is usual for other vehicles from which people safely alight without such assistance, it has been held that a footstool need not be provided. Young v. Mo. Pac. R. R. Co., 93 Mo. App. 267; Tex. Mid. R. R. Co. v. Frey, 25 Tex. Civ. App. 386, 61 S. W. 442.

But where the distance from the step to the ground is three feet or thereabouts, it is the carrier's duty to provide a footstool or some other convenient means to aid the passenger in getting on or off the car. I. C. R. R. Co. v. Cheek, 152 Ind. 663, 53 N. E. 641; Cincinnati, etc., R. R. Co. v. Bell, 74 S. W. 700, 25 Ky. Law Rep. 10.

[4] If the proper physical facilities are provided for this purpose, no duty rests upon the carrier in ordinary cases to render manual assistance to its passengers, even though requested to do so. 10 C. J. 931, § 1352, 5. The general rule, and some of the exceptional cases, are stated and discussed in Central of Ga. Ry. Co. v. Carlisle, supra; 10 C. J. 932, § 1353b.

The complaint is certainly subject to the criticism that it is loosely and inartificially drawn.

[5] In the first and third counts, based on the failure or refusal of the conductor to assist her in alighting, which we interpret as meaning personal and manual assistance, plaintiff invokes the duty of such assistance upon the premise solely that:

"On account of conditions existing at said Grimes she could not get off of said coach without peril to herself (specifying); that it was raining, and the steps of said coach were wet and slippery."

This is manifestly not sufficient to show a duty of assistance by the conductor, for there is no averment showing any want of facilities for leaving the car in some other way than by attempting to step immediately across from the car to the depot platform; nor does the merely wet and slippery condition of the car steps impose such a duty. These counts were subject to several grounds of the demurrer, which should have been sustained.

[6] The second count, like the first and third, is based on the failure or refusal of the conductor to assist plaintiff in leaving the coach. Here, the duty of assistance is invoked upon the premise that, "on account of the arrangement of the depot and tracks at said station," plaintiff could not, unaided, leave the coach on the right "because the coach was up against the depot platform, and plaintiff could not step from said coach to the depot without assistance; and, the ground on the left-hand side of the coach being much lower than the coach, plaintiff could not get down from the coach."

The fact that the ground on the left was much lower than the coach does not show the absence of safe and convenient facilities for alighting, and does not show a duty to provide a means for alighting at another place voluntarily chosen by plaintiff for the purpose; nor does it show, without more, the duty of manual assistance by the conductor on either side. Hence we conclude that this count was also subject to the demurrer.

[7] Counts 4 and 5 are grounded upon defendant's failure to have and maintain a safe and convenient means of egress from its train at Grimes, and we think they are sufficient, and not subject to the demurrer.

[8] Defendant's special plea was no more than the general issue, and its elimination on plaintiff's motion was not prejudicial error.

[9] The fact that on former occasions movable planks had been laid across from the coach steps to the depot platform, and that plaintiff and other passengers had alighted by that means on that side, did not impose upon defendant the special duty of continuing that kind of service, nor estop it from designating, or requiring passengers to alight by, other means at a different place.

The testimony admitted for plaintiff in this behalf was not relevant to any issue in the case, and we think it should have been excluded.

For the errors pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.